THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERTO POPOCA, Defendant-Appellant.

Second District   No. 2—91—1050

Opinion filed June 9, 1993.—Rehearing denied July 23, 1993.

Theodore A. Gottfried, Charles M. Schiedel, and John J. Hanlon, all of State Appellate Defender's Office, of Springfield, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Roberto Popoca, appeals the order of the circuit court denying his petition for post-conviction relief (Ill. Rev. Stat. 1991, ch. 38, par. 122—1 *et seq.*). Defendant argues that the circuit court erred in finding he was not denied the effective assistance of trial counsel who failed to interview occurrence witnesses and failed to present an expert to support defendant's defense of intoxication. We reverse.

A jury found defendant guilty of the attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 9—1(a)(1)) of his wife Leslie and daughter Alicia, armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2), and the aggravated battery of a police officer (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6)). He was sentenced to 20 years' imprisonment for the attempt on his daughter, 10 years' imprisonment for the attempt on his wife, and 2 years' imprisonment for the battery of the officer. The trial court vacated the conviction of armed violence. The only defense presented at trial was voluntary intoxication (Ill. Rev. Stat. 1985, ch. 38, par. 6—3).

The record shows that on June 11, 1985, defendant and his wife borrowed a car and ran errands. They did not eat all day, and they returned to their apartment at 3:30 p.m. While his wife prepared a meal, defendant went to another apartment to return the car keys. There, Fernando Hernandez asked if he wanted a drink. Defendant stayed until about 5 p.m. and drank three or four glasses of vodka and orange juice, although defendant usually drank only beer. Each glass was about six inches tall. However, Hernandez, who provided the drinks, did not think defendant was drunk when he left the apartment. Hernandez testified that defendant did not have difficulty walking or talking, although Hernandez had not seen defendant drink before that occasion.

Defendant walked up several flights of stairs to his own apartment, arriving at 5:10 or 5:15 p.m., and began to argue with his wife. She testified that he was more intoxicated than she had ever seen him and that they argued because he wanted their child baptized. She started to leave for Hernandez's apartment, but he followed her. He fell down one flight of stairs, got up, and fell down another flight. He caught her and threatened to beat her. She calmed him, and they returned to their apartment. They argued some more, and he punched a screen. He said he would kill her. While she was holding their two-year-old daughter, he pulled his wife's head back and thrust a knife at her head. She grabbed the knife in her hand, which was lacerated and later required stitches to mend.

Defendant's wife pleaded to go to the hospital, and defendant agreed to take her. She protested that he was too drunk to drive and knocked on a neighbor's apartment door. Defendant said he would kill their daughter and took her out of his wife's arms. Defendant took her into the garbage room, and his wife and the neighbor followed. They had to retrieve the baby from the chute. There was a compacter eight floors below the chute door.

Two police officers came and arrested defendant. They had to beat him with nightsticks to subdue him as he was swinging his fists at them. He struggled and thrashed about on the floor even after they handcuffed him. The officers testified that they did not consider his abilities to fight, talk, or walk were impaired by alcohol.

The next morning, defendant awoke in the police station. An officer testified that defendant said he did not remember anything past the time he started arguing with his wife. Defendant remembered the details of the events prior to the argument, namely, the errands, the visit to Hernandez, the drinking, and the beginning of the argument.

Defendant's wife testified that she knew defendant was drunk because his eyes were red and glassy, and his speech did not make sense. She had seen him drunk previously, but this was the worst she had seen. She had seen him get violent only once before when he was drunk. She did not notice the odor of alcohol, but she was not that close to him to smell it.

Defense counsel called the laboratory technician who prepared a blood-alcohol report the night defendant was taken to the hospital. He testified that defendant's blood sample showed a count of 201.8 milligrams of alcohol per deciliter of blood. He could not testify on the effects this level would have on a person as he was not a qualified doctor. However, from a pathological standard, a rate of 100 milligrams per deciliter indicated the patient was intoxicated, 350 to 450 milligrams indicated severe intoxication, and 550 milligrams indicated a potentially fatal level of alcohol. Doctors use this standard to base their treatment of the patient. The levels may be used to gauge the extent medications may interact with the presence of alcohol in the blood.

Defendant testified that he ran errands on June 11, 1985, and that he and his wife did not stop to eat. When he returned the car keys, he was offered a drink. He drank three or four vodka drinks although he usually drank beer. Defendant could remember nothing after the time he left that apartment. He remembered waking in the jail feeling the lump on his head and feeling that he had a hangover. He barely remembered talking to the officers that morning.

The prosecutor argued that defendant was not so drunk that he could not form the intent to kill. The prosecutor argued that defendant's claim that he could not remember the incident was not credible because he could remember the events leading up to the incident; and the prosecutor accused defendant of employing selective memory loss. The prosecutor argued that three or four drinks were not enough to render a man incapable of making decisions. He stated that the laboratory technician's testimony showed that defendant was not very intoxicated at all.

Defense counsel argued that while defendant's intoxication was not severe, it was in the range between intoxication and severe intoxication. Counsel asked the jury to consider that alcohol affects people differently and defendant had three or four eight-ounce glasses of a vodka drink. She argued that the evidence showed he was too drunk to have a specific intent to kill. She noted that while the officers would not say defendant was drunk, they did say he was on the floor screaming incoherently.

The jury was instructed, "An intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly and voluntarily." (See Illinois Pattern Jury Instructions, Criminal, No. 24—25.02 (2d ed. 1981); *People v. Baczkowski* (1989), 180 Ill. App. 3d 17, 20.) The jury found defendant guilty on all counts. The trial court sentenced defendant to 20 years' imprisonment for the attempted murder of his daughter.

Defendant appealed his conviction, arguing that the sentence was excessive because the court had not adequately considered the evidence of intoxication. This court affirmed. *People v. Popoca* (1986), 146 Ill. App. 3d 1167 (unpublished order under Supreme Court Rule 23).

At the post-conviction proceeding, defendant presented the evidence which he claims his trial counsel should have introduced to support his defense of voluntary intoxication.

First, defendant presented Dr. Jerrod Giraukas, a licensed clinical psychologist. He conducted a psychological evaluation of defendant on April 16, 1991, to determine the general psychological functioning of defendant to ascertain his mental status at the time of the offense in 1985. Giraukas gave defendant a battery of tests and reviewed his family history, substance abuse evaluations, the original trial transcripts, medical reports and police reports. Defendant came from a family with a history of substance abuse. Defendant himself was classified as a severe alcohol dependent because he suffered from blackouts, used alcohol extensively, lost control, had polysubstance abuse, and drank in the morning, which was a primary symptom of alcoholism. Giraukas determined that defendant was alcohol dependent in 1985. While defendant had been incarcerated since then, that fact had no impact on the diagnosis that defendant was alcohol dependent in 1985. Moreover, his mental intelligence level had not changed. Giraukas also testified that defendant was suffering from and continued to suffer from a neurophysical depressive disorder. The combination of low intelligence and alcohol had a devastating effect on defendant's ability to make appropriate judgments.

Giraukas translated the hospital report to state that defendant's blood-alcohol count (BAC) was 0.20 the day of the offense. Giraukas testified that this percentage is twice the legal definition of intoxication but four times the level of clinical intoxication. Giraukas opined that given that level of blood alcohol defendant was not able to form the intent necessary to commit the offense of murder.

Giraukas also testified that a blackout is a primary symptom of alcohol dependence. A layman who saw a subject suffering from black-

out would not notice anything unusual about the subject. The subject might not remember the events, however. Even if defendant did not report a blackout, Giraukas' opinion would not change because defendant had a constellation of symptoms. A blackout had nothing to do with the ability to formulate intent but rather was a memory problem symptomatic of alcoholics. After cross-examination, Giraukas persisted in his opinion that defendant was not able to form the intent to commit a murder.

Jeanette Morierty testified that she was a substance abuse counselor for the Northern Illinois Counsel on Alcoholism and Substance Abuse in Waukegan. In 1991, she examined defendant to determine his alcohol dependence in 1985. She found he was an alcohol dependent and a polydrug user.

Morierty explained the significance of a 0.20 blood-alcohol count. It indicated an elevated level twice the legal limit. Such a level would affect a man's judgment, emotions, perception and motor coordination. Given defendant's weight, the level indicated a consumption of 15 to 16 ounces of alcohol within three hours prior to the test. The body metabolizes alcohol at the rate of only one ounce per hour. Although defendant was incarcerated for six years, that fact had no effect on the opinion that he was alcohol dependent in 1985. His high tolerance for alcohol would be the same in 1985 or 1991.

The State called defendant's original trial attorney as a witness. She was sure she had discussed the defense with defendant prior to the trial. She had presented the intoxication defense 5 to 10 times in the last 15 years but never used an expert witness to explain the defense. She stated that she thought the use of an expert would help in a case where there were no outward manifestations of intoxication. She recalled that at defendant's trial she presented the result of his blood test and it was 0.20. She could not recall if she presented the standards of legal intoxication, but she remembered that defendant's level was not severe.

Trial counsel considered the decision whether to call an expert to be trial strategy. She did not think defendant's cause would have benefitted from an explanation of the nature of an alcoholic blackout because his ability to recall was not relevant to his ability to form an intent at the time of the incident. She acknowledged that the purpose of the laboratory technician's gauge was intended only for health treatment reasons, not for impairment, and that there was a big difference between a hospital's use of BAC to determine treatment and a jury's use of BAC for determining impairment. Trial counsel had not presented any evidence on the impairment caused by a 0.20 BAC.

She testified that the degree of impairment would differ from person to person.

Trial counsel had not investigated getting an expert witness. She thought that the defendant's actions illustrated his mental state better than an expert could speculate about it. She stated that defendant was not in a position to be tested soon enough after the incident. She did not think that an inquiry into defendant's alcoholic history and susceptibility would have added any benefit to his defense. Trial counsel thought that a psychological evaluation was not necessary because there was sufficient factual evidence to show he could not form an intent to kill. She thought the factual evidence alone showed that the mental state was negated. While an expert would not have hurt defendant's cause, he would not have significantly helped it either.

Trial counsel could not recall if she interviewed the paramedics who took defendant to the hospital after the arrest. She had a copy of a paramedic's report in her file. The report stated that the "patient smelled of alcohol and was very" but the report was cut off. She did not call the paramedic as a witness. She was sure that she did not talk to the doctors or the nurses at the hospital. The emergency room intake sheet stated that defendant was semiconscious and that he was lethargic with ethyl alcohol on his breath.

The circuit court reviewed the original trial court transcripts and denied the claim of ineffective assistance of counsel, stating the evidence at trial presented facts to support a claim of voluntary intoxication. Trial counsel was left in a quandary whether to call an expert because the level of intoxication was between 100 and 350 milligrams. If the defendant called an expert, the State would have called one in rebuttal. The circuit court found that defendant had not met his burden in proving the ineffectiveness of counsel and that not calling an expert was a matter of trial strategy. Defendant appeals.

To prevail on a claim of the ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was so deficient as to fall below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance so prejudiced the defense as to deny the defendant a fair trial. To establish the deficiency of counsel's performance, the defendant must overcome the strong presumption that his counsel's performance fell within the range of reasonable professional assistance. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-89, 80 L. Ed. 2d 674, 693-95, 104 S. Ct. 2052, 2064-66; *People v. Franklin* (1990), 135 Ill. 2d 78, 116-17.)

To demonstrate prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694, 80 L. Ed. at 698, 104 S. Ct. at 2068; *People v. House* (1990), 141 Ill. 2d 323, 388.

The failure to present particular evidence does not by itself prove that a defense counsel was ineffective, because the evidence may be flawed or damaging to the defendant so that competent counsel must make a strategic choice not to present it (*People v. Perez* (1992), 148 Ill. 2d 168, 186-87; see *People v. O'Banner* (1991), 215 Ill. App. 3d 778, 790). For example, where the evidence of intoxication is not strong enough to support the defense, and counsel wanted to "play down" the influence of alcohol, counsel made a tactical decision. (*People v. Winchel* (1987), 159 Ill. App. 3d 892, 916.) However, where the failure is the result of a lack of diligence in investigating the facts and law, rather than a drawback or strategy, counsel may be ineffective. (*Perez*, 148 Ill. 2d at 186-87; *O'Banner*, 215 Ill. App. 3d at 790.) The failure to investigate a defendant's mental history may be grounds for a claim of the ineffective assistance of counsel. *Perez*, 148 Ill. 2d at 190-91; see *Martin v. Maggio* (5th Cir. 1983), 711 F.2d 1273, 1280-81 (discussing alleged failure to investigate intoxication defense).

■ We must apply the *Strickland* standards to the facts of defendant's cause. When a defendant raises the defense of voluntary intoxication, the State must show beyond a reasonable doubt that the existence of the mental state for the offense was not negated by the defendant's intoxication. (*People v. Leger* (1992), 149 Ill. 2d 355, 387.) The defense does not require a showing that the defendant was devoid of any mental activity. (*People v. Baczkowski* (1989), 180 Ill. App. 3d 17, 24-25.) Here, the State tried to disprove defendant's intoxication was so extreme as to negate the specific intent to kill. The prosecutor relied on the testimony of Hernandez and the officers that defendant had control of his motor skills. The prosecutor argued defendant's wife was biased in his favor by testifying he was drunk and that defendant was not credible because his alleged blackout was really selective memory loss.

■ However, motor skills are not directly related to the thought process. A psychologist could testify that an alcoholic may appear normal while his thinking could be totally awry and may commit irrational acts without full control of his reason; an intoxicated alcoholic would not necessarily stagger or slur his speech. (See *People v. LePretre* (1990), 196 Ill. App. 3d 111, 118-19; *People v. Mocaby* (1990),

194 Ill. App. 3d 441, 447.) An expert would have made defendant's testimony that he could not remember the incident less unreasonable and less incredible or could have shown that defendant's failure to remember the details of the offense was symptomatic of extreme intoxication. (*Cf. People v. Jackson* (1991), 145 Ill. 2d 43, 88 (that a defendant remembers details before, during, and after the offense usually negates a voluntary intoxication defense); *People v. Roesler* (1990), 195 Ill. App. 3d 1007, 1013; *People v. Nichols* (1981), 96 Ill. App. 3d 354, 359 (where the evidence indicates that the defendant acted with rationality or remembered the offense with clarity and detail, intoxication is no defense).) Moreover, defense counsel did not investigate calling the paramedic or hospital personnel to testify regarding the extent of defendant's condition or to rebut the opinion of the officers.

While defendant's trial counsel did introduce the laboratory technician, his testimony caused more harm than benefit to defendant's cause. Counsel never translated the 201.8 milligrams of alcohol per deciliter of blood to the familiar 0.20 BAC or tied the reading to the statutory presumptions (see Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(b)(3); see *Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 479 (while statutory presumptions may not apply outside of Vehicle Code cases, doctors may rely on BAC evidence)). Counsel did not give the jury any relevant standard to gauge the BAC. The 100/350/550-milligram gauge is relevant only to pathological treatment, not the impairment of mental abilities. The trial testimony implied that the pathological level was not severe, but a psychological expert could have testified that the level of mental impairment was extreme. Counsel presented no evidence regarding the rate of absorption and elimination of alcohol in the relevant two-hour-long period or that defendant, with a stomach full of drinks, could continue to get more intoxicated even after he stopped consuming more drinks. Counsel did not present evidence that defendant drank not just four drinks of the usual strength but of four times the strength, representing 16 ounces of alcohol. This testimony, established by an expert based on a 0.20 BAC, was more accurate and credible than defendant's and Hernandez's estimations of four six-inch-tall drinks. Defense counsel did note, however, that defendant's thrashing at the police officers was not the action of a rational man.

The State cites several cases in which the courts ruled that the defendants were not denied the effective assistance of counsel for failure to support an intoxication defense. *People v. Treadway* (1985), 138 Ill. App. 3d 899, 903-04, is distinguishable because that opinion

concerned the direct appeal of the conviction, and no external evidence was in the record showing what evidence could have been introduced. There, appellate counsel argued only that trial counsel was ineffective for failing to investigate hypothetical and unnamed occurrence witnesses who might have corroborated defendant's claim that he appeared intoxicated. These arguments were not supported by facts in the record and such witnesses would have undermined the defendant's claim that he had control of his motor functions but not his mental abilities. Similarly, in *People v. Weir* (1986), 111 Ill. 2d 334, 339, the defendant failed to offer the evidence which his trial counsel should have presented to support the claim of ineffective assistance of counsel. In *People v. Quinn* (1988), 173 Ill. App. 3d 597, 606-07, the court noted that the claim of counsel's failure to investigate a diminished capacity defense is more amenable to a post-conviction proceeding where additional facts may be presented.

In *People v. Moore* (1990), 208 Ill. App. 3d 515, 522-23, the defendant was examined by a doctor, but trial counsel chose not to call him at trial. Counsel may have been dissatisfied with the doctor's testimony at an earlier suppression hearing where the doctor conceded the defendant could have been malingering. In *People v. Hillenbrand* (1986), 146 Ill. App. 3d 1075, 1080, counsel was not ineffective in presenting an intoxication defense where there was no laboratory report to corroborate the allegation of intoxication. (See also *People v. Kyse* (1991), 220 Ill. App. 3d 971, 973; *Winchel*, 159 Ill. App. 3d at 916 (lack of evidence to show sufficient intoxication).) Here, defendant argues trial counsel failed to investigate at all into obtaining third-party or technical support for defendant's claim.

The evidence which trial counsel failed to present would have substantially improved defendant's claim given the strong evidence of defendant's intoxication already in the record. While a jury need not accept the conclusions of a psychiatrist with respect to a defendant's intoxication (*Leger*, 149 Ill. 2d at 388; *Nichols*, 96 Ill. App. 3d at 359; *People v. Olson* (1981), 96 Ill. App. 3d 193, 197), especially where the experts rely upon information supplied in part by a defendant, there is a substantial likelihood the proffered evidence would have made a difference. Trial counsel could have presented testimony that defendant consumed 16 ounces of alcohol in less than two hours on an empty stomach instead of the vague testimony of four drinks. Trial counsel could have used the twice-the-legal-limit standard rather than the half-the-severe-level pathological standard. These scientific facts would have a profoundly greater impact on a trier of fact than the evidence actually presented at trial. (See *Ake v. Oklahoma* (1985), 470

U.S. 68, 79-80, 84 L. Ed. 2d 53, 64, 105 S. Ct. 1087, 1094; *People v. Finkle* (1991), 214 Ill. App. 3d 290, 294 (appointment of a psychiatrist can be essential to a defense).) Also, an explanation of the nature of a blackout would have increased defendant's credibility.

The State notes counsel's statement that she thought expert testimony was not relevant because the interview did not occur immediately following the offense. However, both Giraukas and Morierty testified that their diagnoses could relate back in time. Where mental states are concerned, an expert must usually extrapolate back in time to determine a patient's mental state on the date of the occurrence. See *People v. Curry* (1992), 225 Ill. App. 3d 450, 454-55 (psychological opinion is relevant even though psychologist did not observe defendant when he committed the crime).

■ The State also argues that defendant failed to produce evidence at the post-conviction hearing which could have been introduced at his original trial. The State notes that both Giraukas and Morierty were licensed in their professions subsequent to 1985. However, the State cites no authority for this proposition and did not object to their testimony before the trial court; the argument is thus waived. Moreover, scientific evidence is admitted under the premise that the opinion rests on generally accepted scientific principles (see *People v. Thomas* (1990), 137 Ill. 2d 500, 517), and the opinions of the experts here were based on well-accepted standards promulgated by the Secretary of State. Also, similar testimony was available prior to 1985. See *People v. Olson* (1981), 96 Ill. App. 3d 193, 196-97.

■ The State argues that the evidence of defendant's intoxication was not strong. However, defendant testified that he drank three or four vodka drinks, which was not his usual beverage. Hernandez testified he gave defendant several tall drinks of vodka, an odorless form of alcohol. Defendant's wife, who spent the most time with him that evening, said he was more intoxicated than she had ever seen him. The officers described him as thrashing on the floor and screaming incoherently. His actions in trying to kill a child he wanted baptized and thrashing at the officers are not the hallmarks of a rational man.

■ While defendant has established a *prima facie* case for the ineffective assistance of counsel inasmuch as the evidence showing defendant's mental impairment could have been far stronger, we must inquire further into whether trial counsel's failure to call the experts was a matter of trial strategy. (*Winchel*, 159 Ill. App. 3d at 916.) The circuit court mentioned that if defense counsel had called an expert the State would have called one as well. Thus, while defendant's case would have been stronger because a psychologist could have testified

that he lacked the ability to form an intent to kill, the State's expert might have testified that defendant still could have formed the intent. Thus, the jury would have had more evidence to support its conclusion that defendant was responsible for his actions. Trial counsel had to weigh whether the bolstering of defendant's case would have been more than offset by the damaging testimony of the State's opposing expert witness.

However, just as a reviewing court should not second-guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer. (*Harris v. Reed* (7th Cir. 1990), 894 F.2d 871, 878.) Trial counsel did not mention the fear of a State's expert witness as her reason for not calling her own, and the State did not offer any opposing witness at the post-conviction hearing. Trial counsel testified that she did not think an expert would hurt the cause but rather would not significantly help it. Thus, the trial court's rationale for denying the post-conviction petition was not supported by the record.

For the above reasons, the order of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

UNVERZAGT and WOODWARD, JJ., concur.