THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE L. YORK, Defendant-Appellant.

Second District    No. 2—98—1135

Opinion filed April 6, 2000.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael P. Bald, State's Attorney, of Freeport (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Edna Mae Rewers, of Calumet City, for the People.

JUSTICE GALASSO delivered the opinion of the court:

A jury found defendant, Eddie L. York, guilty of aggravated crimi-

nal sexual assault (720 ILCS 5/12—14(a)(2) (West 1996)), and the trial court sentenced him to 16 years' imprisonment. Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt and (2) defense counsel rendered ineffective assistance at trial when she failed to introduce exculpatory DNA evidence. Because counsel failed to introduce the evidence, we reverse defendant's conviction and remand the cause for a new trial.

At trial, Karen Johnson-Stewart, the victim's mother, testified that on December 13, 1996, the victim visited a friend's house. When the victim returned home, she immediately went to her bedroom. The next day, an ambulance transported the victim to the hospital because she was complaining of abdominal pain. The victim underwent surgery and was hospitalized for four to seven days. Colleen Cruse, a registered nurse who treated the victim, testified that she prepared a "sexual assault kit" after the victim revealed that she had been assaulted.

The victim testified that at 4:30 p.m. on December 13, 1996, she left her home to visit a friend. As the victim walked toward her friend's home, defendant drove by with two other men. Someone in the car offered the victim a ride. The victim knew defendant because he was a family friend, but she did not know the men riding with defendant. The victim later learned that defendant was traveling with Thomas Best and Brandon Gaston, the codefendants.

The group drove to see the victim's friend and the victim's cousin, but neither was home. The group eventually went to Best's home, where they listened to music in a bedroom. A man in a wheelchair was also in the room. The victim testified that defendant, Best, and Gaston waited for the man to leave, and then "they shut the door, turned off the lights and locked the door." Best removed the victim's pants and underwear. Best, Gaston, and defendant took turns engaging in sexual intercourse with the victim. Two men restrained the victim while the third assaulted her. The victim did not want to have sex with any of them, and she told each to stop. She recalled that defendant was on top of her for a shorter time than the others. The men promised the victim that they would buy her a pair of shoes if she did not tell anyone about the incident. When the victim returned home, she did not report the incident because she was scared. The victim eventually underwent surgery at the hospital because she "had got something torn up inside" her. The victim later identified her attackers in a photographic lineup.

The victim denied that anyone in the bedroom was smoking cannabis or drinking alcohol. She acknowledged that a girl was in a bedroom across the hall during the attack. Although she thought the girl might help her, the victim did not call out or scream.

Defendant testified that he knew the victim before the attack and

that he was with Gaston and Best on December 13, 1996. The three saw the victim walking and either Gaston or Best offered her a ride. The victim accepted and the group eventually arrived at the house where defendant, Best, and Gaston were residing. Defendant left to visit his girlfriend and returned to find the group in an upstairs bedroom. After everyone smoked cannabis, defendant helped the man in the wheelchair get into his car. When defendant returned, he saw the victim lying on her back on the bed and it appeared that her clothing had been "fumbled with." She did not appear to be upset.

Defendant left to answer the front door to complete a drug transaction. When he returned to the bedroom, defendant saw Best and Gaston assaulting the victim. He asked them "what the hell" they were doing. Defendant stated that he would have intervened if the victim had requested assistance. He asked Best and Gaston to leave and told them, "you all going to catch some cases." Defendant went downstairs and played a video game. Gaston, Best, and the victim walked downstairs approximately 10 to 20 minutes later. Defendant denied committing the acts that the victim described.

Defense counsel then attempted to introduce the results of DNA testing by asking defendant whether he received a report of the results while he was awaiting trial. The trial court sustained the prosecutor's objection that defendant's testimony was inadmissible hearsay. The record reveals that DNA samples were recovered from the victim at the time she was hospitalized. Testing revealed that Best and Gaston deposited semen on the victim and that defendant did not. Although the jury learned that defendant submitted to DNA testing, defense counsel failed to introduce the test results.

During closing argument, the prosecutor stated, "[i]t would have been nice to have DNA evidence if we would have had some semen present or something like that, but gee." Defense counsel did not argue that the State failed to introduce forensic evidence linking defendant to the crime. A jury found defendant guilty, and the trial court sentenced him to 16 years' imprisonment.

On appeal, the State abandons the accountability theory that it introduced at trial. The State does not assert that the jury found that defendant aided and abetted Gaston and Best. Instead, the State merely asserts that the evidence was sufficient to prove that defendant actually assaulted the victim.

Defendant argues that his trial counsel rendered ineffective assistance by failing to introduce the exculpatory DNA test results. The State responds that counsel was effective because DNA evidence is not required to convict a defendant of aggravated criminal sexual assault and that the jury heard sufficient evidence to find defendant guilty. We

conclude that defense counsel's unprofessional conduct deprived defendant of a fair trial. See *People v. Popoca*, 245 Ill. App. 3d 948, 955 (1993).

■ Under *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), defense counsel is ineffective only if (1) counsel's representation fell below an objective standard of reasonableness and the shortcomings of counsel were so severe as to deprive defendant of a fair trial, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Decisions about which witnesses to call and which evidence to present ultimately rest with defense counsel. *People v. West*, 187 Ill. 2d 418, 432 (1999). Courts have long viewed these decisions as matters of trial strategy that are generally immune from ineffective assistance claims. However, a defendant will succeed on a valid claim of ineffective assistance when counsel's strategy is so unsound that he or she fails to conduct any meaningful adversarial testing. *West*, 187 Ill. 2d at 432-33.

Furthermore, defense counsel's failure to present available evidence to support a defense constitutes ineffective assistance of counsel. *People v. Gunartt*, 218 Ill. App. 3d 752, 762 (1991). In *Gunartt*, defense counsel was ineffective for failing to investigate and present information that could have been used to corroborate the defendant's trial testimony. Counsel did not subpoena emergency 911 recordings or defendant's criminal record. Counsel also failed to interview witnesses before they testified at trial. *Gunartt*, 218 Ill. App. 3d at 763.

■ In this case, defendant's theory was that he did not participate in the assault and that he attempted to intervene. Defendant testified that, during the assault, he asked Best and Gaston to leave the house. When they ignored his request, defendant went to a different part of the house and played a video game. The DNA testing revealed that defendant did not deposit semen on the victim. However, defense counsel failed to present the available test results to corroborate defendant's trial testimony. The DNA evidence would have supported defendant's theory, and the State concedes that the evidence was available and conclusive. Defense counsel recognized that the test results were important exculpatory evidence. Her failure to introduce the evidence properly was the result of incompetence, not trial strategy. See *West*, 187 Ill. 2d at 432.

At a minimum, defense counsel could have offered to stipulate that defendant did not deposit semen on the victim. When counsel attempted to improperly use defendant's testimony to introduce the test results, the prosecutor acknowledged that the test results were

exculpatory. In fact, the prosecutor suggested that he would have stipulated to the results if defense counsel had made such a request before trial.

Defendant correctly argues that this case resembles *Popoca*, where the defendant was found guilty of several offenses, including the attempted murder of his wife and daughter. At trial, defense counsel argued that the defendant's voluntary intoxication prevented him from forming the mental state required to commit the offenses. However, counsel did not introduce expert testimony to support the theory. *Popoca*, 245 Ill. App. 3d at 952.

This court affirmed the defendant's convictions and sentences on direct appeal, and defendant filed a postconviction petition alleging ineffective assistance of trial counsel. At the postconviction hearing, defendant presented expert testimony that he claimed his counsel should have presented at trial. The expert testified that defendant had a family history of substance abuse and his blood-alcohol concentration (BAC) was 0.20 at the time of the incident. The expert classified the defendant as a "severe alcohol dependent" because the defendant suffered from blackouts, used alcohol excessively, abused several substances, and drank in the morning. The defendant also suffered from a "neurophysical depressive disorder." The expert concluded that the combination of low intelligence and alcohol abuse drastically limited the defendant's ability to make appropriate decisions on the date of the incident. *Popoca*, 245 Ill. App. 3d at 952.

We concluded that trial counsel rendered ineffective assistance by failing to present an expert to explain the effects that alcohol had on the defendant. We reversed the trial court's dismissal of the postconviction petition and remanded the cause. *Popoca*, 245 Ill. App. 3d at 959. As in *Popoca*, this defendant would have greatly benefitted from expert testimony that supported the defense theory. The conclusive forensic evidence would have substantially improved defendant's claim of innocence. See *Popoca*, 245 Ill. App. 3d at 957.

In *West*, the murder defendant appealed the denial of his postconviction petition, alleging that his trial counsel was ineffective for failing to retain a forensic expert. The defendant's theory at trial was that the victim's mother murdered the victim. To advance his theory, the defendant claimed that it was essential to show that the victim's external injuries predated the time when the victim began living with the defendant. *West*, 187 Ill. 2d at 426. Rather than retaining his own forensic expert, defense counsel cross-examined the State's expert to prove the defendant's theory.

Our supreme court concluded that defense counsel was not ineffective in *West*. On cross-examination, the State's expert testified that

the victim suffered some of her external injuries while she was living with her mother. The supreme court concluded that a second forensic expert would have merely offered cumulative evidence. Therefore, the defendant failed to show how the testimony of a second expert would have affected the outcome of the trial. *West*, 187 Ill. 2d at 433-34.

This case is distinguishable from *West*. The prosecutor declined to introduce the results of the DNA testing because he knew it supported the defense theory. Although defense counsel could not introduce the test results without calling her own expert, she chose to question defendant about the results. The trial court predictably sustained the State's objection to defendant's testimony. If defense counsel would have introduced the DNA evidence, the outcome of the trial likely would have been different. The evidence would not have been cumulative. See *West*, 187 Ill. 2d at 433-34.

In *People v. Todd*, 178 Ill. 2d 297 (1997), the defendant claimed his trial counsel was ineffective for failing to call an independent forensic expert. The defendant noted that the State's experts could not link the defendant to any of the hairs discovered at the crime scene, and the defendant believed that an additional expert would have undermined the State's theory that he removed the victim's clothing and strangled her without depositing any of his own hair. *Todd*, 178 Ill. 2d at 329. The supreme court concluded that defense counsel was not ineffective for failing to present an additional expert on the subject. The court noted that the defendant's argument was speculative because he could not show whether any expert could state the claim in scientific terms. *Todd*, 178 Ill. 2d at 330. Expert testimony concerning the DNA evidence would not be speculative in this case. There is no question that the tests revealed that defendant did not deposit semen on the victim. Defendant could use the results to support his theory that he did not have intercourse with the victim.

In *People v. Mehlberg*, 249 Ill. App. 3d 499 (1993), DNA evidence was the key to the State's evidence against the defendant in an aggravated criminal sexual assault prosecution. The Appellate Court, Fifth District, held that defense counsel's failure to call a DNA expert did not constitute ineffective assistance because counsel cross-examined the State's experts and challenged the evidence in his closing argument. Such tactics were considered "within the wide range of reasonable professional conduct." *Mehlberg*, 249 Ill. App. 3d at 546. The court held that, although the testimony of a defense expert may be more effective than a defense counsel's cross-examination and closing argument challenging DNA test results, counsel's failure to produce such an expert does not render his or her assistance ineffective. *Mehlberg*, 249 Ill. App. 3d at 546-47. In this case, defense counsel

could not cross-examine the prosecution's experts because the State did not call any experts. To introduce the exculpatory DNA evidence, defense counsel had to call her own expert witness or offer to stipulate to the test results.

Finally, the State argues that counsel's failure to introduce the evidence was harmless. During closing argument, the prosecutor stated, "[i]t would have been nice to have DNA evidence." The State contends that, by this statement, the prosecutor informed the jury that forensic testing revealed that defendant's DNA was not found on the victim. We disagree. The jury could have inferred that the tests were inconclusive.

■ Finally, we have reviewed the record and conclude that there was sufficient evidence from which the jury could conclude that the defendant committed the offense charged beyond a reasonable doubt. This finding is not binding upon the trial court and is intended only to protect the defendant from the risk of double jeopardy. See *People v. Taylor*, 76 Ill. 2d 289, 309 (1979).

We note that medical evidence is not necessary to prove a defendant guilty of aggravated criminal sexual assault. See *People v. Fryer*, 247 Ill. App. 3d 1051, 1058 (1993). At a new trial on remand, the State need not prove that defendant deposited semen on the victim. Nevertheless, to insure that defendant receives a fair trial, defense counsel should introduce the exculpatory DNA evidence for the trier of fact to consider.

For these reasons, the judgment of the circuit court of Stephenson County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

BOWMAN, P.J., and McLAREN, J., concur.