**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210542-U

Order filed

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-21-0542 Circuit Nos. 19-DT-32, 19-TR-1152, and 19-TR-1154 |
| DAVID S. AGUILAR, | ) ) ) | Honorable Victoria R. Breslan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice Holdridge and Justice Albrecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) Whether counsel was ineffective for failing to introduce medical expert testimony is better suited for collateral review. (2) Defense counsel was ineffective for failing to introduce evidence that defendant had a valid driver's license.

¶ 2     Defendant, David S. Aguilar, appeals his convictions and sentence for driving while under the influence of alcohol (DUI) and failing to carry or display a license, arguing defense counsel was ineffective. We affirm in part, vacate in part, and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4          Defendant was charged with DUI (625 ILCS 5/11-501 (West 2018)), improper lane usage

(*id.* § 11-709(a)), failure to reduce speed (*id.* § 11-601), and failure to carry or display a license

(*id.* § 6-112). At the September 7, 2021, bench trial, the State's evidence established that on

January 4, 2019, at approximately 1:54 a.m., Anna Fracaro was driving in the center lane on

Interstate 55 with her husband, Jeremy Fracaro. The Fracaro's vehicle was struck on the rear

driver's side and pushed into the guardrail by a sport utility vehicle (SUV) driven by defendant.

Anna did not see defendant's SUV prior to the impact.

¶ 5          After both vehicles came to a stop, Jeremy checked on defendant. Jeremy testified, over

defense counsel's objection, that he knocked on the SUV's window and defendant appeared

intoxicated. Jeremy described defendant as "seem[ing] a little out of it. Dazed would be the best

way to put it[,]" and that he was "[s]truggling to stay awake almost." Jeremy heard defendant's

SUV's engine rev up, so he backed away and walked to the shoulder to wait for law enforcement

to arrive.

¶ 6          Illinois State Trooper Jeremy Kunken arrived at the scene of the accident shortly

thereafter. Kunken testified that defendant appeared to be attempting to drive away as his reverse

lights were illuminated and the SUV's engine was revving. He ordered defendant to exit the

SUV, and noted defendant was stumbling as he complied. Kunken further testified that defendant

had red, glassy eyes, "a very strong odor of an alcoholic beverage" on his breath, and slurred,

mumbling speech. Kunken placed defendant in handcuffs to prevent him from leaving the scene

and sat him in the front seat of his patrol car while he completed his investigation. While Kunken

sat in the front seat next to defendant, defendant kept falling asleep and Kunken continued to

smell alcohol. On cross-examination, Kunken testified that he asked defendant if he was injured.

Defendant appeared confused and unwilling to speak but Kunken did not think defendant needed medical attention.

¶ 7        The State admitted portions of a squad car video which tended to corroborate Kunken's testimony that defendant appeared intoxicated. On the video, another individual who stated he used to be a medic arrived on the scene and asked defendant repeatedly how he was doing and if he needed medical attention. Later in the video, Kunken informed another officer "[h]e is valid, yeah." Kunken also completed a report that was admitted into evidence, in which he checked a box indicating that defendant's license was valid.

¶ 8        Defense counsel attempted to introduce evidence that defendant was a diabetic experiencing a sugar spike episode but was largely unsuccessful. Defendant testified on his own behalf that he had not consumed any alcohol on the date of the accident. He testified that he had type 2 diabetes and that, among other things, he had issues with his blood sugar which sometimes caused him to get tired. Defendant testified that his "main indicator" when experiencing a diabetic episode is "falling asleep." Occasionally during an episode, defendant is not aware of what is happening. Defendant testified that just before the accident he believed something was wrong but could not pull over to check his blood sugar in time because he was on the expressway. He stated he kept getting hot and "just like a darkness was happening," before "kind of waking up and then seeing like a big white light."

¶ 9        Defense counsel then attempted to introduce evidence of defendant's alleged diabetic sugar spike episode. Counsel asked defendant, "do some of the symptoms of sugar spikes too high or low present as intoxication?" The State objected to the question as it required expert testimony, and the court instructed the defense to "keep it as to the effects that occurred to him, not what those would be perceived by anyone else or what they may be like, but the actual

3

effects that happened, okay?" Counsel then attempted to lay foundation for a medical card the defendant carried to indicate he was a diabetic. The State objected as "[t]here [was] no person [t]here to testify as to where it comes from or the accuracy." The court sustained the objection and only allowed defendant to testify that the card is "[j]ust in case anything happens. *** Like if I pass out in a store, my sugar spikes too high and things like that, I guess. Just for identification."

¶ 10       During closing argument, defense counsel argued defendant's blood sugar spike presented as intoxication. The prosecution responded that defendant never told anyone he was diabetic at the scene of the accident; there was no evidence tying his behavior to diabetes; and there were no "medical personnel here that can testify that [diabetes] is, in fact, what led to the events that occurred here." The court found defendant not guilty of failure to reduce speed and guilty of DUI, improper lane usage, and failure to carry or display a license. Defendant filed a motion to reconsider, arguing the State failed to prove beyond a reasonable doubt essential elements of DUI and failure to carry or display a license. The court denied the motion.

¶ 11       At the sentencing hearing, the parties announced they had come to an agreement on a sentence. The agreement included $2000 in assessments for DUI, improper lane usage, and failure to carry or display a license, under what the State called the "old guidelines."[1] Later, defendant asked the court "[a]s far as my driver's license, was it because I didn't have my license on me or because they didn't know if I was valid?" The court explained it was the former, and defendant responded he was never asked during trial if he had a valid license, but he did have a valid license. Defendant appealed.

---

[1]The legislature approved Public Act 100-987, which replaced the prior fines and fees regime with the streamlined Criminal and Traffic Assessments Act. See Pub. Act 100-987 (eff. July 1, 2019) (amending 705 ILCS 135/1-1 *et seq.*)

¶ 12                                    II. ANALYSIS

¶ 13        On appeal, defendant argues his counsel was ineffective. Illinois courts review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Wise*, 2019 IL App (2d) 160611, ¶ 51. Under *Strickland*, counsel renders ineffective assistance when (1) counsel's performance falls below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the results of the proceedings would have had a different outcome. *Id.* A defendant bears the burden of proof on both prongs of this test. *People v. Burks*, 343 Ill. App. 3d 765, 775 (2003).

¶ 14        "To establish deficient performance, the defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy." *Wise*, 2019 IL App (2d) 160611, ¶ 52. Actions that are considered matters of trial strategy are accorded great deference by reviewing courts. *People v. West*, 187 Ill. 2d 418, 432 (1999). A defendant is entitled to competent representation, not perfect representation. *People v. Tucker*, 2017 IL App (5th) 130576, ¶ 26. "[E]ven if defense counsel makes a mistake in trial strategy or tactics or an error in judgment, this will not render representation constitutionally defective." *People v. Perry*, 224 Ill. 2d 312, 355 (2007). A reviewing court evaluates counsel's conduct under the totality of the circumstances. *Tucker*, 2017 IL App (5th) 130576, ¶ 54. We will consider each of defendant's ineffective assistance arguments in turn.

¶ 15                                A. Medical Testimony

¶ 16        We first consider defendant's argument that counsel was ineffective for failing to introduce medical testimony supporting his diabetes defense. "[D]ecisions concerning whether to call certain witnesses on a defendant's behalf are matters of trial strategy, reserved to the

5

discretion of trial counsel." *People v. Enis*, 194 Ill. 2d 361, 378 (2000). "Counsel's failure to call an expert witness is not *per se* ineffective assistance \*\*\*." *People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005). Counsel may be ineffective for failing to "present available evidence to support a defense." *People v. York*, 312 Ill. App. 3d 434, 437 (2000).

¶ 17 "For a reviewing court to engage in a meaningful review of whether failing to call an expert witness constituted ineffective assistance of counsel, the testimony of the expert would undoubtedly prove helpful to the disposition of the claim." *People v. Pellegrini*, 2019 IL App (3d) 170827, ¶ 50. Ineffective assistance of counsel claims may be better suited to collateral proceedings when the record is incomplete or inadequate for resolving the claim. *People v. Veach*, 2017 IL 120649, ¶¶ 46-47.

¶ 18 Here, defendant does not specify what medical expert defense counsel should have called, or what specific testimony they would have provided. Without knowing that there was an expert who would have testified and what that testimony would have been, we are incapable of rendering an opinion on whether counsel's performance was deficient or whether the result of the proceedings would have been different. This matter therefore is more appropriate for resolution on collateral review. See, *e.g.*, *People v. Kindle*, 2021 IL App (1st) 190484, ¶¶ 55-56 (finding that the question of whether counsel was ineffective for failing to present testimony was better suited for collateral review because resolution of the issue depended on facts not in the record).

¶ 19 B. Failure to Carry or Display a License

¶ 20 Defendant next argues defense counsel was ineffective for failing to introduce evidence that defendant had a valid driver's license at the time of the accident. The State agrees. Section 6-112 of the Illinois Vehicle Code provides that a person cannot be convicted of failing to carry or display a license "if he produces in court satisfactory evidence that a drivers license was

theretofore issued to him and was valid at the time of his arrest." 625 ILCS 5/6-112 (West 2018). Defendant's failure to produce his license at the time of his arrest is therefore immaterial if he can provide by "satisfactory evidence" that a driver's license was issued to him at the time of his arrest.

¶ 21    Here, counsel's failure to introduce defendant's driver's abstract or other evidence that he possessed a valid license at the time of his arrest amounted to deficient performance. Defendant had a valid license at the time, a fact that should have been known to counsel where both defendant and the officer noted the validity of the license. In general, failing to offer exculpatory evidence is unreasonable where the evidence presents no downside risk to defendant's case. See, *e.g.*, *People v. Makiel*, 358 Ill. App. 3d 102, 108 (2005); *People v. Morris*, 335 Ill. App. 3d 70, 82-83 (2002); *People v. York*, 312 Ill. App. 3d 434, 437 (2000). Further, "counsel's tactical decisions may be deemed ineffective when they result in counsel's failure to present exculpatory evidence of which he is aware." *People v. King*, 316 Ill. App. 3d 901, 913 (2000). There was no tactical decision in failing to present exculpatory evidence that defendant possessed a valid license at the time of the accident.

¶ 22    Counsel's ineffectiveness also prejudiced defendant because the appellate record demonstrates defendant possessed a valid license at the time of arrest. Notably, Kunken's report confirmed defendant possessed a valid license, and Kunken can be heard on the video stating, "He is valid, yeah." Clearly, the result of the proceedings would have been different but for counsel's deficient performance. We agree with the parties that the appropriate remedy is to vacate defendant's conviction for failure to carry or display a license. We, thus, order the circuit court to vacate defendant's conviction and sentence for failure to carry or display a license.

¶ 23 We note that defendant was assessed $2000 in fines, fees, and costs for all three of his convictions. As we vacate one of defendant's convictions, we vacate the full value of the assessments and remand for a recalculation of the monetary assessments for the two remaining convictions. In doing so, we note that defendant is subject to the fees in effect at the time of sentencing (*People v. Higgins*, 2014 IL App (2d) 120888, ¶¶ 15-20) and can elect to receive the imposition of the most lenient version of any fines then in effect (see 5 ILCS 70/4 (West 2022) ("If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect.")). Because we reach this conclusion, we need not consider defendant's remaining ineffective assistance argument.

¶ 24 In sum, we affirm defendant's conviction for DUI, vacate defendant's conviction for failure to carry or display a license, and remand for further proceedings, including the recalculation of defendant's monetary assessments.

¶ 25                                   III. CONCLUSION

¶ 26 The judgment of the circuit court of Will County is affirmed in part, vacated in part, and remanded for further proceedings.

¶ 27 Affirmed in part, vacated in part, and remanded for further proceedings.