**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240308-U

Order filed April 21, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0308 Circuit No. 19-CF-1512 |
| | ) | |
| DONNA L. MESSINA, | ) ) | Honorable Michael W. Reidy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Peterson and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:   Defense counsel was not ineffective for failing to disclose expert witness discovery where the evidence adduced at the *Krankel* hearing failed to establish deficient performance.

¶ 2   Defendant, Donna L. Messina, appeals her convictions for aggravated driving while under the influence of alcohol (DUI). Specifically, defendant argues trial counsel was ineffective for failing to disclose an expert witness's opinion in support of an involuntary intoxication defense and for failing to investigate other doctors before trial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant with two counts of aggravated DUI (625 ILCS 5/11-501(d)(1)(A), (2)(B) (West 2018)). Before trial, defense counsel disclosed James Thomas O'Donnell as a potential witness. Counsel sent the State a copy of O'Donnell's *curriculum vitae* but did not specify the subject matter of his potential testimony. The State moved, pursuant to Illinois Supreme Court Rule 413(c) (eff. July 1, 1982), to compel disclosure of all statements, reports, notes, and memoranda that O'Donnell generated or relied upon regarding defendant. The record does not reflect a ruling on this motion.

¶ 5          On December 3, 2021, the State moved *in limine* to bar defendant from presenting any previously undisclosed evidence or testimony. It noted defendant had yet to assert any affirmative defenses and sought to bar any evidence or argument in support of unpled or undisclosed defenses. The court deferred ruling on the motion.

¶ 6          On December 6, 2021, the defense filed a supplemental disclosure indicating defendant "will rely upon the State's inability to prove her guilty beyond a reasonable doubt." The supplemental disclosure provided nothing else.

¶ 7          Before the start of evidence, the State filed another motion *in limine*, asserting defendant had tendered two e-mails between trial counsel and O'Donnell suggesting a potential defense would be "something existed in the body of [defendant] and created alcohol in her stomach and was not consumed by her." The State indicated defendant had not disclosed any medical condition. When the court asked if defendant had a medical condition, trial counsel responded, "[I]t's possible that we may be putting forth a defense on[,] and issue with[,] the blood test." The court reserved its ruling on the State's motion.

¶ 8

¶ 9        The motions *in limine* were brought up ahead of jury selection. Defense counsel asked the court for leeway on cross examination in arguing the blood test was unreliable. The court responded, "I'll give all of the latitude in the world." The court later stated, "[Y]ou can argue whatever you want with your expert," and "[i]f there is an issue, both of you just approach."

¶ 10       The matter proceeded to a six-person jury trial. The evidence adduced at trial showed that at approximately 11:15 p.m. on July 4, 2019, officers investigated a hit-and-run accident involving a parked car with impact damage to its front driver's side. The car was parked on the side of a four-lane road, with two lanes in each direction. A bumper with a license plate from another vehicle was located a short distance from the damaged car. Officers found the car from which the bumper originated parked in defendant's driveway. Defendant told officers she could not afford to pay for a tow truck, she "didn't feel comfortable stopping," and she had been at a friend's house where she consumed two beers. According to defendant, she was on her way home when she struck a vehicle that "had never been parked there before." The parked car was located on the opposite side of the street defendant was driving on. Defendant exhibited red, bloodshot, and glassy eyes and showed signs of impairment on the walk-and-turn and one-leg stand field sobriety tests. Following her arrest, defendant refused to complete a Breathalyzer test but ultimately submitted to a DUI blood kit at 3:50 a.m., pursuant to a warrant. Defendant's DUI blood kit showed a blood alcohol concentration (BAC) of 0.121.

¶ 11       Defendant called O'Donnell to testify. The court qualified O'Donnell as an expert in toxicology, pharmacology, and nutrition. In preparation for his testimony, O'Donnell reviewed the police reports and video recording associated with defendant's arrest, laboratory reports, and defendant's medical records. O'Donnell visually examined defendant and read literature on the absorption of alcohol in the body and "the effects of dietary changes on altering the microbiome

3

effect of antibiotics on gut flora" which "have the potential to cause a production of alcohol in the bowel." O'Donnell additionally learned that defendant had ulcerative colitis, and the State raised a hearsay objection.

¶ 12 Following the objection, the court held a sidebar with the parties outside the presence of the jury. The court asked whether defendant's "medical documents" were given to O'Donnell. When trial counsel responded affirmatively, the court asked, "Did the State get a copy of those?" Counsel replied, "I don't know. I don't have them." The State confirmed it had not received the medical documents. The court stated, "this is sandbagging. *** I mean, how is that fair to the State?" Trial counsel responded, "I don't know what [defendant] gave to [O'Donnell.]" In granting the State's objection and motion to bar, the court noted two issues with trial counsel's attempt to present the medical evidence through O'Donnell: first, counsel had failed to tender the information that O'Donnell relied on and, second, O'Donnell's testimony "regarding the yeast in the gut and this medical diagnosis" was hearsay. The court barred O'Donnell from testifying about his "opinion regarding anything regarding any medical diagnosis that you heard from any other doctor or read in a report, and anything related to that elevating the BAC." Additionally, the court barred defendant from testifying to her condition, as it was hearsay. The court permitted O'Donnell to testify about the possible unreliability of the preservation of defendant's blood sample. O'Donnell ultimately testified the test results were potentially invalid. Defendant chose not to testify.

¶ 13 The jury found defendant guilty of both counts. The matter was continued for sentencing, and the court ordered a presentence investigation report. During her interview, defendant provided a statement asserting ineffective assistance due to trial counsel's failure to ensure an expert would be able to testify regarding her health conditions leading to her aggravated DUI convictions. The court did not conduct a *Krankel* inquiry and sentenced defendant to 24 months' probation. On

4

direct appeal, this court found the circuit court failed to conduct an adequate inquiry into defendant's posttrial claims of ineffective assistance of counsel. *People v. Messina*, 2023 IL App (3d) 220071-U, ¶ 12. We remanded with instructions to conduct a *Krankel* inquiry. *Id.* ¶ 14.

¶ 14    On remand, the court conducted a preliminary inquiry. Trial counsel indicated defendant's medical records were hearsay and O'Donnell would not have been able to testify to that information. Counsel was aware of defendant's other treating doctors, but he did not speak with them. Counsel explained he intended O'Donnell to "be the expert and testify with his oral opinion about what he believed had happened here" in lieu of calling defendant's other doctors. Following the inquiry, the court appointed counsel and continued the matter for an evidentiary hearing.

¶ 15    At the evidentiary hearing, defendant testified that following her arrest for aggravated DUI, she contacted O'Donnell through her trial counsel. Defendant believed she experienced a reaction to antibiotics she had been prescribed for an infected tooth, coinciding with her arrest. Following a colonoscopy roughly 18 months before the instant offense, defendant was diagnosed with ulcerative colitis. Defendant discussed her symptoms with O'Donnell and gave him documents from her colonoscopy, tooth extraction, and tooth infection. Defendant discussed "Dr. Albert Snow," a naturopathic doctor whom she consulted with "through the internet." Snow gave her dietary recommendations related to her ulcerative colitis diagnosis. Pursuant to this advice, defendant was eating soft carbohydrates at the time of the arrest.

¶ 16    On cross-examination, the State asked if defendant made changes to her diet after her arrest, and she stated she "was not eating" but was "sipping down soup." Defendant explained her change in diet was due to the stress of this case. Additionally, defendant sought treatment from a neurologist and her general practitioner, and she gave O'Donnell her medical records from those visits. None of defendant's doctors diagnosed her with auto-brewery syndrome.

¶ 17    O'Donnell testified he was a "doctor of pharmacy," but was not a medical doctor. He was retained to provide an opinion regarding the production of alcohol within defendant's body. If permitted to testify, he would have explained that the human gut can naturally produce detectable alcohol even without drinking, though it typically does not cause intoxication. O'Donnell added that people with digestive diseases or yeast infections, especially those caused by antibiotics, can experience increased gut fermentation—especially with high-carbohydrate diets. He concluded that disease, diet, and drug-induced yeast growth may lead to elevated bowel alcohol production, which can enter the bloodstream and cause intoxicating effects, known as auto-brewery syndrome. O'Donnell indicated the syndrome is very rare. Related to defendant's case, trial counsel asked O'Donnell not to complete a detailed written report. O'Donnell reviewed documentation, including that of Snow to evaluate a potential defense for defendant. O'Donnell did not treat defendant and stated Snow was not a medical doctor.

¶ 18    On cross-examination, O'Donnell testified that in researching auto-brewery syndrome, he could not find any studies linking the syndrome and ulcerative colitis. O'Donnell acknowledged defendant was not diagnosed with auto-brewery syndrome, had not undergone blood or urine testing to be diagnosed with the syndrome, and testing would not be useful since they could not reproduce the circumstances of the night of defendant's arrest. O'Donnell believed defendant's BAC of 0.121 "did not fit" with her admission to consuming two beers, leading to his belief that auto-brewery syndrome was the cause of defendant's "potential false elevation of the blood alcohol reading." Trial counsel did not testify at the hearing.

¶ 19    Following the evidentiary hearing, the court concluded defendant failed to establish trial counsel provided ineffective assistance. The court described trial counsel's actions as "trying to backdoor a way of trying to just muddy the waters." The court noted that defense attorneys

6

sometimes attempt to create reasonable doubt by "muddy[ing] the waters." The court viewed the decision not to call a doctor who may testify unfavorably as a strategic move to protect defendant's case. It court found "this is a situation [trial counsel] can't necessarily put forth a witness that might not be helpful for him or his client." The court also noted the auto-brewery syndrome defense was "not corroborated through any examinations or testing." The court found defendant's testimony incredible and concluded neither defendant nor O'Donnell would have been able to testify to the documents or her undiagnosed condition, regardless of whether O'Donnell had testified. Having found no basis to support defendant's claim, the court found trial counsel's actions were trial strategy, and this appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21        On appeal, defendant argues trial counsel provided ineffective assistance when he failed to investigate defendant's other doctors and tender expert witness-related discovery, causing the expert's testimony to be barred. Specifically, defendant argues she established ineffective assistance and requests that we vacate her convictions and remand for a new trial. In doing so, defendant ignores the procedural posture of her claim, as the circuit court completed a *Krankel* inquiry, appointed counsel, conducted an evidentiary hearing, and reached the merits of her claim. In this context, where the circuit court rendered a decision on the merits of defendant's ineffective assistance of trial counsel claim, we will reverse that decision only if it was manifestly erroneous. See *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 25; see also *People v. Morgan*, 187 Ill. 2d 500, 528 (1999) ("Determinations made by the trial court subsequent to an evidentiary hearing will not be disturbed unless manifestly erroneous."). Manifest error is "clearly evident, plain, and indisputable." (Internal quotation marks omitted.) *People v. Johnson*, 206 Ill. 2d 348, 360 (2002).

7

¶ 22    To succeed on a claim that counsel provided ineffective assistance, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a defendant must overcome a strong presumption that counsel's actions were the product of sound trial strategy. *People v. Manning*, 241 Ill. 2d 319, 327 (2011). "A defendant can overcome the strong presumption that defense counsel's choice of strategy was sound if counsel's decision appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." (Emphasis and internal quotation marks omitted.) *People v. Bryant*, 391 Ill. App. 3d 228, 238 (2009). When considering trial strategy, a court will recognize the costs and benefits of calling particular witnesses and pursuing particular questions. See *People v. Consago*, 170 Ill. App. 3d 982, 988 (1988) (certain portions of testimony could have been harmful to defendant). Defendant bears the burden of proof for both prongs under *Strickland* and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Enis*, 194 Ill. 2d 361, 377 (2000).

¶ 23    Upon review of the record, trial counsel's statements at the preliminary hearing, and the testimony at the evidentiary hearing, we conclude trial counsel decided, strategically, not to investigate other medical doctors' opinions and to instead present O'Donnell's opinion. The fact that counsel knew of defendant's other treating medical doctors but instead chose to call O'Donnell to provide an opinion "about what he believed had happened" based on defendant's statements, supports a strategic choice to avoid evidence that could potentially harm defendant's trial defense. See *People v. Popoca*, 245 Ill. App. 3d 948, 953, 957-59 (1993) (the reviewing court found defendant made a substantial showing of ineffective assistance due to counsel's failure to

8

investigate any expert related to a potential defense for involuntary intoxication). Specifically, trial counsel had a defense based on a medical condition that defendant had been diagnosed with *18 months before the offense*. There was no indication defendant continued to receive medical treatment for ulcerative colitis following her diagnosis. Thus, further investigating defendant's medical condition later could have revealed defendant no longer had the condition or its attendant symptoms at the time of her arrest, precluding her potential defense. Even if counsel had disclosed to the State all of the medical records and materials provided to Dr. O'Donnell as well as his opinion, and he was permitted to testify to the content of those materials pursuant to *Wilson v. Clark*, 84 Ill. 2d 186 (1981), his ultimate opinion regarding the auto-brewery syndrome would not have been admissible at trial. The court specifically found the defense had not established a connection between colitis and auto-brewery syndrome. Ultimately, given the testimony defendant had never been diagnosed with auto-brewery syndrome, and O'Donnell's inability to link ulcerative colitis to auto-brewery syndrome, there is a reasonable presumption trial counsel's choice to forgo calling defendant's doctors was strategic. See *Consago*, 170 Ill. App. 3d at 988; see *People v. Garcia*, 2021 IL App (2d) 181032-U, ¶¶ 7, 13, 25-27 (the reviewing court found trial counsel provided ineffective assistance for failing to introduce defendant's bipolar disorder diagnosis into evidence during a DUI trial).

¶ 24        Finally, trial counsel's statements at the preliminary hearing, along with the testimony of defendant and O'Donnell at the evidentiary hearing, show that trial counsel knew the limitations of relevancy and admissibility of O'Donnell's testimony as an expert. Specifically, trial counsel was aware that defendant's ulcerative colitis diagnosis 18 months before her DUI arrest and other information related to her health conditions were inadmissible hearsay. Yet trial counsel attempted to bypass the basic principles of evidence to present the jury with an alternative explanation for

defendant's behavior and elevated BAC by way of O'Donnell's opinion. And while O'Donnell could testify this very rare auto-brewery syndrome existed, O'Donnell was unaware of any connection between the syndrome and ulcerative colitis, and defendant was not and could not be tested for the syndrome, particularly where there was no way to duplicate the circumstances surrounding the instant offense. Thus, defendant failed to establish the prejudice prong of *Strickland* because there was no reasonable probability the result of the trial would have been different.

¶ 25 In light of these facts, counsel could have strategically chosen not to include the other doctors or to subject defendant to additional tests, anticipating that such actions might reflect poorly on defendant. Trial counsel's actions show a deliberate strategy to admit O'Donnell's opinion without risking the admission of documentation or medical opinions that would not support defendant's defense. Thus, we cannot say trial counsel's decision was "so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." (Internal quotation marks omitted.) See *Bryant*, 391 Ill. App. 3d at 238. Because trial counsel's actions were based on trial strategy, defendant cannot establish deficient performance, and defendant's claim of ineffective assistance of counsel must fail. See *Enis*, 194 Ill. 2d at 377. Accordingly, defendant failed to establish that the circuit court's finding of effective assistance of trial counsel was manifestly erroneous.

¶ 26 III. CONCLUSION

¶ 27 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 28 Affirmed.

10