2022 IL App (1st) 210454-U

THIRD DIVISION
December 21, 2022

No. 1-21-0454

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| | ) | Appeal from the |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 13 CR 23378 |
| RAMONE RILEY-PALMER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James B. Linn, |
| | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Burke and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Affirming the summary dismissal of defendant's postconviction petition where defendant forfeited his claim of ineffective assistance of trial counsel and where defendant did not sufficiently allege a claim of ineffective assistance of appellate counsel.

¶ 2   Following a jury trial, defendant Ramone Riley-Palmer was convicted of first-degree murder and sentenced to 40 years' imprisonment in the Illinois Department of Corrections. We affirmed defendant's conviction and sentence on direct appeal. Thereafter, defendant filed a post-

conviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), asserting that his trial counsel was ineffective for failing to present an expert in eyewitness identification and that his appellate counsel was ineffective for failing to raise this argument on direct appeal. The circuit court of Cook County summarily dismissed the petition. Defendant now appeals, arguing that his petition stated the gist of constitutional claims that trial and appellate counsel were ineffective. For the following reasons, we affirm.

¶ 3                              BACKGROUND

¶ 4     On September 12, 2013, Brian Rollins (Rollins) was chased out of his home and was shot ten times and killed. As a result, defendant was charged in a 95-count indictment with numerous counts of first-degree murder, felony murder, home invasion with a firearm, aggravated kidnapping, residential burglary, attempted armed robbery with a firearm, and aggravated unlawful restraint. The State proceeded to a jury trial on eight of those counts.

¶ 5                             Trial Proceedings

¶ 6     At trial, the State presented evidence that on the day of the incident, Rollins was shot and killed after he was chased from his home by defendant. The evidence included the testimony of three individuals that they knew defendant from their neighborhood and observed defendant with a handgun while chasing Rollins.

¶ 7     Lashuna Hudson (Hudson) testified that on September 12, 2013, she was in the kitchen at the home she shared with her boyfriend, Rollins, on 105th Street when she heard a knock at the door. At that time, Rollins was in the basement with his friend Matthews Parker (Parker). She called for Rollins to answer the door, and he did. Immediately after, a man unknown to Hudson entered the kitchen brandishing a firearm. The man instructed Hudson to be quiet as he rummaged through her kitchen cabinets. Unsatisfied with his search, the man exited the kitchen.

Hudson then heard two or three gunshots, and three men rushed into the kitchen with raised firearms. Two were wearing white shirts and one was wearing a blue and white striped polo shirt. Hudson recognized the man wearing the blue and white striped polo shirt as defendant, a man she knew from her neighborhood. As the three men ran out the back door, Hudson escaped through the front door. On the night of the incident, Hudson stayed at a hotel, and she was visited by members of the police department. During the police's visit, she identified defendant in a photo array. The next day, Hudson visited the police station and identified defendant in a lineup.

¶ 8    Parker testified that on September 12, 2013, at 1 p.m., he was in the basement of Rollins's home when he heard a commotion. Parker fled through the basement door and ran through the alley to his nearby home where he retrieved a .380 caliber handgun. Parker then ran back to Rollins's house, where he observed Hudson running out the front door screaming, "They [are] shooting him." Parker also noticed Diamone Douglas (Douglas) standing across the street. He then observed someone running in the alley, so he ran after them. Once in the alley, he observed two men wearing white shirts running west and heard four or five shots coming from the direction of 104th Place. Parker then fired two shots in the direction of the two men and went to look for Rollins. Parker found Rollins lying face down on 104th Place having been shot multiple times.

¶ 9    Douglas, who at trial was in the custody of the Cook County Department of Corrections for failing to appear and testify in this case, testified that on September 12, 2013, at 1 p.m., she was walking across the street from Rollins's house when she observed Rollins run out the front door and down the gangway to the alley. Shortly after, she observed defendant run after Rollins while pointing a handgun in his direction. Douglas testified that she knew Rollins and defendant from her neighborhood. Douglas then heard gunshots. On November 20, 2013, she identified

Rollins and defendant from photos provided to her by the assistant state's attorney.

¶ 10    Shalonda Lowe (Lowe) testified she was living on 105th Street and Perry Avenue at the time of Rollins's murder and had known defendant since he was an infant. Just before 1 p.m. on September 12, 2013, she went outside while defendant and two other men were passing her home.  She "knew something wasn't right" and asked the men what was "going on," but the men kept walking and did not respond. Lowe walked behind them and observed the three men go to Rollins's home. Lowe further testified that she noticed Douglas run away from the house while carrying a handgun. She next observed Rollins run out of the house towards 104th Place with defendant running behind him. Lowe heard gunshots and observed defendant shoot at Rollins. Then, from her friend's porch, Lowe watched as Rollins slipped and fell. Lying on his back, Rollins put his hands in the air and said, "Why are you doing this to me?  I ain't done nothing to none of you guys." Defendant responded, "F[***] you," stood over Rollins, and shot him three or four times. Lowe did not speak with the police until October 24, 2013, when she identified defendant in a photo array.

¶ 11    Dr. Benjamin Soriano, an assistant medical examiner with the Cook County medical examiner's office, testified as an expert in forensic pathology. Dr. Soriano testified that he performed Rollins's autopsy on September 13, 2013, during which he took photographs and prepared a report of his findings. Dr. Soriano found ten gunshot wounds on Rollins's body: the right side of his head, left upper back, left lateral chest, left index finger, right wrist, the back of his right hand, two in his right thigh, left thigh, and right foot. Dr. Soriano testified one of the bullets that entered through Rollins's right thigh was recovered in Rollins's abdominal wall. According to Dr. Soriano, the wounds to Rollins's hands were consistent with being shot while Rollins's hands were up. Dr. Soriano further opined that the shot to Rollins's head was consistent

with being shot while on the ground and could have been fatal. Dr. Soriano testified that Rollins's cause of death was from multiple gunshot wounds and his manner of death was homicide.

¶ 12    The State rested and defendant's motion for a directed verdict was denied. Defendant declined to testify, and the defense presented two witnesses and a stipulation. Detective Arthur Davis testified he authored the police reports for this case and that on September 15, 2013, defendant was placed in custody and subsequently released without charges. Defendant was placed into custody again for this case on November 7, 2013.

¶ 13    Detective Keith Allen testified that he worked with Detective Davis and interviewed Lowe. Detective Allen confirmed that his report of Lowe's interview did not include a statement that defendant tried to shoot Parker.

¶ 14    The parties stipulated that on September 12, 2013, at 10:20 p.m., detectives received a telephone call from a person who identified herself as Kiera Davis and stated that her boyfriend Matthews Parker told her that he was at the house when Rollins was killed, that "Ramone" killed Rollins, and that "Nook, Santonio, and Diamone" participated. The defense rested.

¶ 15    After hearing closing arguments and jury instructions, the jury deliberated and found defendant guilty of first-degree murder. The jury was deadlocked as to whether a firearm enhancement applied, and the trial court declared a mistrial on that issue.

¶ 16                                    Posttrial Proceedings

¶ 17    At sentencing, after considering the arguments of counsel and the presentence investigation report, the court sentenced defendant to 40 years' imprisonment. In sentencing defendant, the trial court "acknowledge[d] the fact that [the jury] did not find that he personally discharged the firearm that caused death" but asserted that the evidence demonstrated the victim

was shot to death and the court was compelled to "add at least the 15-year enhancement to the offense of murder."

¶ 18    Defendant filed a motion to reconsider the sentence, arguing that the trial court improperly included a 15-year firearm enhancement based on a finding not made by the jury. The trial court denied the motion and clarified that it did not apply a 15-year enhancement to defendant's sentence and properly sentenced defendant to 40 years' imprisonment regardless of any enhancement.

¶ 19                                    Appeal

¶ 20    Defendant filed a direct appeal, arguing that (1) the trial court violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and the evidence in this case was closely balanced and (2) the trial court improperly included a 15-year firearm enhancement to his sentence since the jury did not make a finding regarding an enhancement. We affirmed defendant's conviction and sentence. *People v. Riley-Palmer*, 2019 IL App (1st) 161520-U, ¶ 53.

¶ 21                            Post-Conviction Petition

¶ 22    Defendant filed a post-conviction petition. In his petition, defendant argued that Lowe's, Douglas's, and Hudson's eyewitness testimonies were unreliable, and thus, trial counsel was ineffective for failing to present testimony from an expert in eyewitness identification. Defendant asserted Hudson's testimony was unreliable since she had a limited opportunity to view the three armed men who ran through her kitchen, she was likely distracted by the men's firearms, and she identified defendant in a photo array merely because he was her acquaintance from the neighborhood. Defendant also asserted that Douglas's and Lowe's testimonies were unreliable since they did not identify defendant for at least a month after Rollins's murder. Further, defendant stated that Douglas had an improper incentive to testify against defendant since

Douglas was seen running from Rollins's house and was thus a suspect in Rollins's murder.

¶ 23     Defendant also argued that an expert in eyewitness identification would have testified that the stress of an event, the presence of a weapon, the passage of time, disguises, "post-event information," nighttime viewing, suggestive police procedures, and cross-racial identifications can render an eyewitness's identification less accurate. Defendant further argued that an expert would have testified that neither an eyewitness's confidence nor the fact that an eyewitness identified an acquaintance demonstrates that an identification is accurate.

¶ 24     In addition, defendant argued that his appellate counsel was ineffective for failing to raise on direct appeal trial counsel's failure to call an expert in eyewitness testimony.

¶ 25     At a hearing on defendant's petition, the trial court found the petition lacked merit. In making this determination, the trial court found that defendant argued "his lawyer didn't come up with a good strategy" but failed to explain "what his lawyer should have done strategically differently than was done." Further, the trial court found that defendant was merely "challenging the weight of the testimony against him." The trial court then summarily dismissed the petition in a written order.

¶ 26     This timely appeal follows.

¶ 27                              ANALYSIS

¶ 28     On appeal, defendant argues that the trial court erred in summarily dismissing his postconviction petition, which he asserts sufficiently set forth claims that defendant received ineffective assistance of trial and appellate counsel. For the following reasons, we affirm.

¶ 29                              The Act

¶ 30     The Act (725 ILCS 5/122-1 *et seq.* (West 2020)) "provides a method by which defendants may assert that, in the proceedings which resulted in their convictions, there was a

substantial denial of their federal and/or state constitutional rights." *People v. Wrice,* 2012 IL 111860, ¶ 47. A proceeding under the Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. Beaman,* 229 Ill. 2d 56, 71 (2008). The defendant must show he suffered a substantial deprivation of his federal or state constitutional rights. *People v. Caballero,* 228 Ill. 2d 79, 83 (2008).

¶ 31    The Act provides a framework for incarcerated individuals to collaterally attack their convictions by establishing the substantial denial of a constitutional right during trial or sentencing. 725 ILCS 5/122-1(a)(1) (West 2020). Claims are limited to those that were not and could not have been litigated. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). Proceedings under the Act occur in three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the trial court determines whether a petition is frivolous or patently without merit. *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2020). At the second stage, the court appoints counsel to represent the defendant and, if necessary, to file an amended petition; at this stage, the State must either move to dismiss or answer the petition. *Gaultney*, 174 Ill. 2d at 418; 725 ILCS 5/122-4, 122-5 (West 2020). Only if the petition and accompanying documentation make a substantial showing of a constitutional violation will the defendant proceed to the third stage, an evidentiary hearing on the merits. *People v. Silagy*, 116 Ill. 2d 357, 365 (1987); 725 ILCS 5/122-6 (West 2020).

¶ 32    Defendant's petition was dismissed at the first stage. Our supreme court has made clear that, to survive first-stage scrutiny, a petition must state the "gist" of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Formal legal argument and citation of authority are not required (*id.*), and all well-pleaded facts that are not positively rebutted by the record are taken as true (*People v. Romero*, 2015 IL App (1st) 140205, ¶ 26). A petition may be summarily dismissed as "frivolous or patently without merit" when it has "no arguable basis either in law or

in fact," or in other words, when the petitioner's claim relies "on an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *People v. Boykins*, 2017 IL 121365, ¶ 9. We review the summary dismissal of a postconviction petition *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 33                    Ineffective Assistance of Trial Counsel Claim

¶ 34    Defendant first argues that his postconviction petition sufficiently alleged that his trial counsel was ineffective since she failed to present an expert witness in eyewitness identification to rebut Hudson's eyewitness testimony. We agree with the State, however, that defendant has forfeited this claim. Defendants must raise ineffective assistance of trial counsel claims on direct appeal if apparent from the record, and defendants forfeit these claims by failing to do so. *People v. Veach*, 2017 IL 120649, ¶¶ 46-47. Since defendant could have argued on direct appeal that his trial counsel was ineffective by failing to present an expert witness, defendant has forfeited this claim. See *id.*; *Petrenko*, 237 Ill. 2d at 499.

¶ 35                    Ineffective Assistance of Appellate Counsel Claim

¶ 36    Defendant also argues, however, that his petition sufficiently alleged that his appellate counsel was ineffective by failing to argue on direct appeal that his trial counsel was ineffective by failing to present an expert witness in eyewitness identification to rebut Hudson's testimony. To succeed with this claim at the first stage, a petitioner must sufficiently allege that (1) his appellate counsel's performance arguably fell below an objective standard of reasonableness and (2) appellate counsel's performance arguably prejudiced defendant, or that there arguably is a reasonable probability that defendant's appeal would have been successful but for appellate counsel's errors. *People v. Delgado*, 2022 IL App (2d) 210008, ¶ 26. Whether appellate counsel's alleged errors arguably prejudiced a defendant depends on whether the underlying

argument had merit. *People v. Dixon*, 2019 IL App (1st) 160443, ¶ 46. Thus, since defendant

claims that his appellate counsel was ineffective by failing to argue that his trial counsel was

ineffective, we must determine whether defendant's ineffective assistance of trial counsel

argument would have been successful if it had been raised on direct appeal. *People v. Childress*,

191 Ill. 2d 168, 175 (2000).

¶ 37                              *Defendant's Underlying Argument*

¶ 38    On direct appeal, when a defendant argues that his trial counsel was ineffective, we apply

the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under

*Strickland*, a defendant must demonstrate that (1) trial counsel's performance fell below an

objective standard of reasonableness and (2) trial counsel's alleged errors prejudiced the

defendant. *People v. Lewis*, 2022 IL 126705, ¶ 45 (citing *Strickland*, 466 U.S. at 687). An

ineffective assistance claim cannot succeed if a defendant fails to establish either prong of the

*Strickland* test. *People v. Boots*, 2022 IL App (2d) 200640, ¶ 35.

¶ 39    We find that, had appellate counsel argued on direct appeal that trial counsel was

ineffective by failing to present an expert in eyewitness identification, defendant would not have

been successful, as trial counsel's alleged errors did not prejudice defendant. Since we find that

defendant was not prejudiced, we need not consider whether trial counsel's performance was

reasonable. See *Boots*, 2022 IL App (2d) 200640, ¶ 35.

¶ 40    Defendant argues that, since the trial evidence against him was weak, there is a

reasonable probability that the jury would have acquitted him had trial counsel called an expert

to rebut Hudson's eyewitness identification. Defendant asserts that an expert could have testified

that (1) the presence of a weapon may have rendered Hudson's identification less accurate, (2)

neither Hudson's confidence nor the fact that she identified an acquaintance demonstrates that

her identification was accurate, and (3) that Hudson may have identified defendant in a line up merely because she had already identified him in a photo array.

¶ 41    In determining whether defendant was prejudiced, we ask whether there is a reasonable probability that, but for trial counsel's alleged errors, the trial's outcome would have been different. *Lewis*, 2022 IL 126705, ¶ 45 (citing *Strickland*, 466 U.S. at 693). When an alleged error undermines confidence in the outcome, then there is a reasonable probability of a different outcome but for the alleged errors. *Id.* (citing *Strickland*, 466 U.S. at 694).

¶ 42    In resolving defendant's argument, we find instructive our recent decision in *People v. Elliott*, 2022 IL App (1st) 192294. In *Elliott*, the defendant was charged with first-degree murder, and the State presented three eyewitnesses at trial. *Id.* ¶¶ 1-11. Following trial, a jury convicted the defendant of first-degree murder. *Id.* ¶ 27. On direct appeal, the defendant argued that there was a reasonable probability of his acquittal if trial counsel had presented eyewitness expert testimony rebutting the testimony of one of the eyewitnesses. *Id.* ¶ 48. The defendant asserted that the expert would have testified as to several topics, including the low correlation between eyewitnesses' confidence and the accuracy of their identifications and how the presence of a weapon affects eyewitnesses. *Id.* This court rejected the defendant's contention, however, finding it was "far too speculative to establish prejudice under *Strickland*." *Id.* ¶ 49. We reasoned that "as no expert testimony was proffered, such testimony is necessarily speculative." *Id.* (citing *People v. Johnson*, 2021 IL 126291, ¶ 58). We further reasoned that the State could have called its own expert to bolster its eyewitness's testimony. *Id.* (citing *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 39).

¶ 43    Here, defendant presented no expert in eyewitness identification, so any assertion as to what an expert would testify to is "necessarily speculative," and this speculated testimony is

insufficient to establish prejudice. See *id.*; see also *People v. Johnson*, 2021 IL 126291, ¶ 58 (citing favorably to *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001), which found that speculation as to what an expert witness would testify is insufficient to demonstrate prejudice under *Strickland*). In addition, if trial counsel had presented expert testimony rebutting Hudson's eyewitness testimony, then the State could have presented its own expert to bolster the accuracy of Hudson's identification. See *Elliott*, 2022 IL App (1st) 192294, ¶ 49 (citing *Macklin*, 2019 IL App (1st) 161165, ¶ 39).

¶ 44    Defendant further sets forth several arguments pointing to purported flaws in Lowe's, Douglas's, and Hudson's eyewitness testimonies. Defendant asserts that these flaws made it necessary for trial counsel to present an expert in eyewitness identification. On direct appeal, however, we rejected many of these identical arguments.

¶ 45    As to Lowe's identification, defendant argues it was unreliable since Lowe identified defendant one month after the offense. On direct appeal, however, this court concluded that "[w]e do not find this period of time to be so lengthy as to render their identifications unreliable" and that "[c]ourts have found identifications to be reliable even where they were made *** two years after an offense." *People v. Riley-Palmer*, 2019 IL App (1st) 161520-U, ¶ 37. In addition, defendant argues that Lowe testified that when defendant shot Rollins, he was facing defendant but that "[t]he physical evidence and Parker's testimony *** showed that Rollins was shot from behind." Lowe did not only testify, however, that Rollins was facing defendant when he was shot. Lowe testified that defendant shot at Rollins as defendant chased him, Rollins slipped and fell, and Rollins lay on his back and put his hands up before defendant shot him three or four times. Also, neither Parker's testimony nor the physical evidence presented at trial demonstrate that Rollins was "shot from behind." Parker testified that, after Rollins was shot, Parker found

him lying on the sidewalk face down. Further, Dr. Soriano testified that defendant had gunshot wounds on the right side of his head, left upper back, left lateral chest, left index finger, right wrist, the back of his right hand, two in his right thigh, left thigh, and right foot. Moreover, this court concluded that "the medical examiner's testimony regarding the location of the victim's gunshot wounds corroborates Lowe's testimony regarding her observations of defendant being shot." *Id.* ¶ 41.

¶ 46    As to Douglas's identification, defendant similarly argues that it was unreliable since Douglas identified defendant two months after the offense. As stated above, however, this court found that two months was not so lengthy as to render Douglas's identification unreliable. *Id.* ¶ 37.

¶ 47    Finally, as to Hudson's identification, defendant asserts that it may have been inaccurate since Hudson "was likely distracted" by the firearms held by the three men in the kitchen. This court rejected that argument, however, finding that "[e]ven though defendant was holding a handgun, Hudson testified regarding his height, his complexion, his eye color, and the type of clothing he was wearing. This testimony demonstrates Hudson was not solely focused on the weapon as defendant suggests." *Id.* ¶ 36. In addition, defendant argues that Hudson may have had "mugshot commitment," which means that Hudson may have identified defendant in a line up merely because she had already identified him in a photo array. This court rejected that argument as well, finding that "the evidence demonstrates that Hudson testified she first identified defendant when he came into her kitchen, not during the photo array." *Id.* ¶ 37.

¶ 48    Therefore, we conclude that there is not a reasonable probability that the trial's outcome would have been different had trial counsel presented expert witness testimony rebutting Hudson's testimony. See *Lewis*, 2022 IL 126705, ¶ 45 (citing *Strickland*, 466 U.S. at 693). Trial

counsel's failure to call an expert witness does not undermine our confidence in the outcome. See *id.* (citing *Strickland*, 466 U.S. at 694). As explained above, defendant's speculation as to what an expert witness in eyewitness identification would testify is insufficient to establish prejudice under *Strickland*, and even if an expert had been called, the State could have presented its own expert to bolster Hudson's testimony. See *Elliott*, 2022 IL App (1st) 192294, ¶ 49 (first citing *People v. Johnson*, 2021 IL 126291, ¶ 58; and then citing *Macklin*, 2019 IL App (1st) 161165, ¶ 39). Further, several of the purported flaws that defendant argues made it necessary to call an expert witness were rejected by this court on direct appeal. Critically, in affirming defendant's conviction and sentence, this court on direct appeal found that the evidence at trial was not closely balanced and that "Hudson, Douglas, and Lowe all knew defendant prior to the shooting and reliably and credibly identified defendant as one of the shooters with no significant discrepancies." *Riley-Palmer*, 2019 IL App (1st) 161520-U, ¶ 39.

¶ 49    We have considered the cases defendant cites for his contention that his trial counsel's failure to present an expert witness prejudiced him. See *People v. Davis*, 377 Ill. App. 3d 735 (2007); *People v. Montgomery*, 327 Ill. App. 3d 180 (2001); *People v. York*, 312 Ill. App. 3d 434 (2000); *People v. Popoca*, 245 Ill. App. 3d 948 (1993). We find these cases to be unpersuasive.

¶ 50    In each case, the reviewing court found that defense counsel's failure to present an expert witness prejudiced the defendant since the expert testimony that the defendant argued should have been presented was critical to his defense, or since the trial evidence presented against the defendant was weak, or both. In *Davis*, the reviewing court agreed with the lower court that "the State's witnesses were woefully inconsistent and contradictory and incredible." *Davis*, 377 Ill. App. 3d at 747. Further, in *Montgomery*, the reviewing court found that the defendant was arguably prejudiced based on the value of the evidence not presented at trial and the closeness of

the case. *Montgomery*, 327 Ill. App. 3d at 186. In *York*, defense counsel failed to present an expert witness to introduce DNA test results that defense counsel recognized were "important exculpatory evidence," and the reviewing court found that "[t]he conclusive forensic evidence would have substantially improved defendant's claim of innocence." *York*, 312 Ill. App. 3d at 437-38. Finally, in *Popoca*, defense counsel failed to introduce expert testimony that "would have a profoundly greater impact on a trier of fact than the evidence actually presented at trial." *Popoca*, 245 Ill. App. 3d at 958.

¶ 51    Unlike the foregoing cases, the trial evidence presented against defendant was not weak. This court on direct appeal rejected many of defendant's arguments as to the purported weaknesses in the eyewitnesses' testimonies, and critically, found the evidence at trial was not closely balanced and the State's key eyewitnesses "reliably and credibly identified defendant as one of the shooters with no significant discrepancies." See *Riley-Palmer*, 2019 IL App (1st) 161520-U, ¶ 39. Moreover, the expert testimony that defendant argues should have been presented is "far too speculative to establish prejudice." See *Elliott*, 2022 IL App (1st) 192294, ¶ 49.

¶ 52    Thus, we find that defendant was not prejudiced when trial counsel did not call an expert witness in eyewitness identification, and defendant's ineffective assistance of trial counsel argument would not have been successful had appellate counsel raised it on direct appeal. See *Childress*, 191 Ill. 2d at 175; *Boots*, 2022 IL App (2d) 200640, ¶ 35. Further, since defendant's argument that his trial counsel was ineffective had no merit, his appellate counsel's failure to raise this argument did not arguably prejudice him. See *Delgado*, 2022 IL App (2d) 210008, ¶ 26; *Dixon*, 2019 IL App (1st) 160443, ¶ 46. As defendant's allegations failed to demonstrate arguable prejudice, we need not consider whether defendant's allegations demonstrate arguably

deficient performance by appellate counsel. See *Delgado*, 2022 IL App (2d) 210008, ¶ 26.

¶ 53    Defendant has forfeited his claim of ineffective assistance of trial counsel and failed to sufficiently allege a claim of ineffective assistance of appellate counsel. Therefore, we conclude that the trial court did not err when it summarily dismissed defendant's postconviction petition.

¶ 54                                   CONCLUSION

¶ 55    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 56    Affirmed.